(No. 37826.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. J. CUNNINGHAM, Plaintiff in Error.

*Opinion filed March 18, 1964.*

JAMES G. ARCHER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and JOHN J. O'TOOLE, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, A. J. Cunningham, Cleo Turntine and

Augusta Coleman, were jointly indicted by the grand jury for the criminal court of Cook County for the crimes of armed robbery and murder, arising out of a hold-up of a liquor store. Coleman pleaded guilty and the defendant and Turntine were tried by the court without a jury. They were each found guilty and the defendant was sentenced to a term of 99 years on the murder charge and to a term of not less than 1 year nor more than life imprisonment on the armed robbery charge. We allowed Cunningham's petition for a writ of error under Rule 65—1 and appointed counsel for him.

Although several points are argued in the defendant's brief, we find it necessary to consider only one of them. Police officer Edward Witry testified that he arrested Turntine and the defendant at about 5:30 P.M. on April 14, 1950. After questioning them for several hours, they told him their part in the murder and robbery and also told him that Coleman was the third man involved in the crimes. Coleman was arrested the same night and the officer then had further conversations with the three men. He testified that during the course of his conversations, the defendant told him that he and the others had gone to the liquor store for the purpose of committing a robbery and that he heard some shooting and ran out of the store. He denied firing any shots. The officer testified that on the following afternoon the defendant and the other men signed statements and then were taken to the liquor store where they reenacted the robbery and the murder. The written statements were not introduced in evidence. The officer testified that at the re-enactment each of the 3 men took the positions in the store which they had been in when the shooting started. The defendant told the officers that he had walked to the rear of the store and took up a position near the telephone booth.

Turntine testified in his own behalf that he, Coleman and the defendant had gone to the liquor store to commit

a robbery. He testified that the clerk pulled a gun and that he then shot the clerk. The defendant testified and denied being present at the time of the robbery and murder. During the course of his direct examination, he was asked whether he had gone to the liquor store to re-enact the crimes and he replied, "Well, the way it happened, they taken us down to the bureau, they tied me to a chair and they kicked me." In spite of the fact that Coleman had pleaded guilty, counsel for Coleman was permitted to cross-examine the defendant. During this examination the attorney read extensively from the defendant's written statement and asked him whether he had made certain answers to certain questions. The defendant admitted that he had said in the statement that he was in the liquor store at the time of the robbery but testified that he had made these statements because he had been beaten. During the defendant's cross-examination by the prosecutor, he repeated his testimony that he had been beaten by police officers before signing any statement and before re-enacting the crime.

Coleman was called as a witness by the defendant's attorney and he testified that he, Turntine and the defendant had gone to the liquor store to commit a robbery. On cross-examination by the prosecutor he testified that the defendant drove to the store and that all three men entered the store armed with guns.

After the defense had rested, the court asked the prosecutor if he had any rebuttal testimony. The prosecutor replied that he had none. The court inquired, "You were going to call back one witness?" The prosecutor attempted to explain the purpose of calling this witness but the court interrupted with the statement, "I don't care what the purpose was, you had permission if you wanted to call him." The State then rested without introducing any rebuttal testimony.

On this record, the defendant's testimony that he was beaten by the police prior to signing a statement and prior

to re-enacting the crime, stands uncontradicted. Citation of authority is unnecessary for the proposition that a confession obtained by such means is inadmissible and that a conviction obtained through the use of such a confession cannot be permitted to stand. The State does not dispute these propositions, but contends that they are inapplicable because the defendant's written confession was not admitted in evidence. While it is true that the written statement was never introduced in evidence, excerpts therefrom were read during the course of the trial. Also, officer Witry testified that the defendant orally confessed his guilt and re-enacted the crimes. Under these circumstances we cannot agree with the State's contention that the defendant's testimony of police brutality was immaterial. When an issue as to the voluntary nature of a confession has been raised the burden is on the State to prove that the confession was voluntary, and in order to sustain that burden the State must produce all material witnesses connected with the confession (*People v. Wright*, 24 Ill.2d 88, 92). Here the State not only did not produce all of the witnesses, but did not even attempt to rebut the defendant's testimony. The judgments of conviction must be reversed and the cause remanded for a new trial.

The defendant's other assignments of error raise the question of whether there was a conflict of interest which should have prevented the same attorney from representing both Turntine and the defendant. We do not find it necessary to discuss them in detail in this opinion, for on a retrial of this case the problem will not arise.

The judgments of the criminal court of Cook County are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*