THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE FRAZIER, Defendant-Appellant.

First District (3rd Division)   No. 83—1155

Opinion filed July 25, 1984.

Deborah Liebow, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Patrick Foley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Defendant, George Frazier, was found guilty of theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1)), and he was sentenced to seven years in the Illinois Department of Corrections under the extended-term provision of section 5—8—2(a)(5) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—2(a)(5)). We reverse

and remand.

Although defendant had filed a jury demand, at the time the case was called for trial he chose to waive a jury and he requested a bench trial. The trial judge denied defendant's request, stating:

> "THE COURT: Let the record reflect there is a jury in the courtroom. The State's witnesses have been sent for. This case has been set for trial and previously, there has always been a demand for a jury trial. We have gone to the trouble of getting a jury together. I think this notification comes too late. It is discretionary with the Court. There has heretofore been a demand for a jury, and I will deny the defendant's request for a bench trial, and we will proceed to pick the jury."

During the *voir dire* examination of the prospective jurors, the State used five of its peremptory challenges. All five of the persons excluded were blacks. In the process, the State excluded 100% of the available black jurors who were questioned during the *voir dire* proceedings. Thus, as a result of the State's use of its peremptory challenges, defendant, who is black, was tried and convicted by an all-white jury of the theft of a white woman's purse.

In his brief, in addition to his contention that his sentence was excessive, defendant contends that he was denied his right to a bench trial and that he was then denied the type of fair jury trial guaranteed by the United States Constitution because the State affirmatively frustrated his right to a jury drawn from a fair cross-section of the community by systematically excluding blacks from the jury solely because of their race.[1]

The State did not file a brief. Instead, the State filed a petition confessing error on defendant's contention that he was denied his right to a bench trial. Based on its confession of error, the State moved that we "vacate defendant's conviction and sentence for theft and remand the case for a new trial."

██ Plainly, the trial court erred in denying defendant's request for a bench trial since the request was made before the commencement of trial. (See Ill. Rev. Stat. 1983, ch. 38, pars. 103—6, 115—1; *People v. Spegal* (1955), 5 Ill. 2d 211, 125 N.E.2d 468.) However, since the double jeopardy clause forbids a second trial for the purpose of af-

---

[1]Defendant timely raised the objections in the trial court. In an appendix to his brief, defendant compares the backgrounds of the black prospective jurors who were excused by the prosecutor with the backgrounds of those persons who became jurors. Defendant argues that the record demonstrates that the blacks who were excluded are factually heterogenous and that the single distinguishing characteristic that the excluded blacks share is their race.

fording the prosecution another opportunity to supply evidence which it failed to muster in the first trial (*Burks v. United States* (1978), 437 U.S. 1, 11, 57 L. Ed. 2d 1, 9-10, 98 S. Ct. 2141, 2147), we shall avoid the risk of subjecting defendant to double jeopardy by deciding whether the evidence adduced at trial was sufficient to sustain defendant's conviction for theft. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

The victim testified that on April 28, 1982, at about 11:45 a.m., she was walking with a friend near the Garfield Park conservatory in Chicago when two men ran between them. One of the men grabbed at her purse. She attempted to hold on to it, but the strap of the purse broke, and the man ran off with the purse. The victim told her friend to call the police, and she ran after the man who had taken her purse. She followed him past a field to a street behind the conservatory. When the man crossed the street and ran into an alley, she stayed on the opposite side of the street parallel to the alley in an attempt to see the man between the buildings. She eventually lost sight of him, and she had started back to the conservatory when a police officer arrived. The victim gave a description of the man to the police officer. The police officer then accompanied the victim and her friend to look for the man in the area.

The victim further testified that she saw and identified the man on a sidewalk several blocks from the conservatory. When approached by the police squad car, the man started to run down a walkway between two buildings. The police officer chased him for about 20 feet until the suspect entered an alley. The police officer returned to his car and called in the description of the suspect and asked for assistance. Shortly thereafter, the police officer received a radio call from another police officer that a man fitting the description of the suspect was being held at a location on Springfield Street. The police officer and the two women proceeded to that location. When they arrived, defendant was being taken from a garage in handcuffs. The victim identified defendant as the man who had taken her purse. After the testimony of the victim, her friend and the two police officers, the State rested its case. The defense's motion for a directed verdict was denied, and the defense rested. No other evidence was received.

Under the circumstances, we believe that the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean that we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather, our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting

defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

██ Defendant's other contention, that the State unconstitutionally used its peremptory challenges to systematically exclude blacks from the jury solely because of their race, cannot go unnoticed. It has been stated that "the practice of excluding jurors on the basis of race is pervasive in Illinois and that it raises constitutional issues of the gravest dimension under two separate guarantees." (*People v. Moore* (1984), 101 Ill. 2d 549, 560 (Simon, J., dissenting from denial of leave to appeal); see also Waltz, *Now it's Harder for Lawyers to Pick a Biased Jury*, Chicago Sun-Times, July 13, 1982, at 30.) Moreover, two members of the United States Supreme Court have called the use of peremptory challenges by prosecutors to systematically exclude blacks from juries "one of the gravest and most persistent problems facing the American judiciary today." (*Williams v. Illinois* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 836, 838, 104 S. Ct. 2364, 2366 (Marshall, J., dissenting, joined by Brennan, J.).) The *Williams* case was referred to when "the prosecutorial abuse of peremptory challenges" was recently described as a problem which "has grown to epidemic proportions in certain regions of the county." (*Harris v. Texas* (1984), 467 U.S. ___, ___, 82 L. Ed. 2d 858, 860, 104 S. Ct. 3556, 3558 (Marshall, J., dissenting).) In addition, five members of the United States Supreme Court have indicated that the systematic exclusion of blacks from jury service through the State's use of peremptory challenges is so serious that it will merit the court's review at a later date. See *McCray v. New York* (1983), 461 U.S. 961, 77 L. Ed. 2d 1322, 103 S. Ct. 2438 (opinion of Stevens, J., joined by Blackmun and Powell, JJ.) (dissenting opinion of Marshall, J., joined by Brennan, J.).

Under the circumstances, we believe that when the issue of a prosecutor's systematic exclusion of citizens from jury service solely because of their race is raised,[2] we should not cower but rather we should seize the high ground on the issue and discuss it freely and with conviction to the end that prosecutors are no longer permitted to systematically exclude citizens from serving on juries solely because of their race, gender or ethnicity. On this point, pursuant to the Illinois Constitution, article VI, section 17, Chief Justice Howard C. Ryan, on behalf of the Illinois Supreme Court, recently submitted to the General Assembly an annual report suggesting improvements in the administration of justice. The report, dated January 1, 1984, states:

---

[2]We, of course, are bound by and would not deviate from the Illinois Supreme Court decision in *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

"Nevertheless, we believe it important to reiterate what should be clear from our decisions: '[N]o one *** would disagree with the premise that the systematic exclusion of blacks for jury duty is unconstitutional and should be condemned. *** The systematic exclusion of any group based on sex or ethnicity is equally repugnant, but the most effective way to prevent this may be the drastic reduction of peremptory challenges.' *People v. Payne* (1983), 99 Ill. 2d 135, 139, 140 (Clark, J., specially concurring)." *Legislature Receives Report of Chief Justice*, Ill. St. B.A., 14 Bench and Bar No. 9 (Mar. 1984).

Since the legislature has failed to do anything to solve the problem[3] despite the exhortation from the highest level of the judiciary, it is apparent that "the judiciary must be vigilant to avoid the systematic exclusion of blacks from jury duty ***." (*People v. Payne* (1983), 99 Ill. 2d 135, 140, 457 N.E.2d 1202, 1204 (Clark, J., specially concurring).) In this regard, we believe that we have an obligation to make it possible for defendants to track the appellate cases where it is alleged that prosecutors are systematically excluding blacks from jury service solely because of their race, and to make it possible for defendants to track the prosecutors who are involved in those cases so that defendants may determine whether the prosecutors are systematically excluding blacks from juries solely because of their race "in case after case." (See *Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) If this relevant information is not available to defendants, the exacting test in *Swain* becomes illusory, for the test could hardly be applied, let alone satisfied.

It is therefore our belief that these cases should be disposed by published opinions which include the names of the prosecutors. On this premise, we believe that the present case has precedential value and should be disposed by a published opinion rather than by an unpublished order. (See 87 Ill. 2d R. 23.) The prosecutors representing the State in the trial of the present case were Gary Adair and William Gamboney. Of course, we pass no judgment and make no inference regarding their conduct or motive in the present case or in any other case.

We see no injustice to prosecutors in including their names in the published opinions since it is common practice to include the names of the attorneys and the parties they represent in the cases that are

---

[3]See appendix 1 for a list of several different methods that have been suggested for attacking the problem. See appendix 2 for a showing of the pervasive concern of the public about the problem.

reported. In addition, we see no injustice to prosecutors in including their names in the published opinions of these cases since we presume, as did the court in *Swain*, "that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court." (*Swain v. Alabama* (1965), 380 U.S. 202, 222, 13 L. Ed. 2d 759, 773, 85 S. Ct. 824, 837.) It follows that we can presume that the prosecutor should be able to prevail in any claim that he excluded blacks from jury service solely because of their race "in case after case" should he be called on the issue.

Of course, if a prosecutor does not prevail when called on the issue, then the prosecutor and the State must bear the heavy burden the charge entails. For the prosecutor, if he does not prevail, it could constitute a violation of his ethical and professional duty, for it is clear "that the systematic exclusion of blacks for jury duty is unconstitutional *and should be condemned.*" (Emphasis added.) (*People v. Payne* (1983), 99 Ill. 2d 135, 139, 457 N.E.2d 1202, 1204 (Clark, J., specially concurring); *Legislature Receives Report of Chief Justice*, Ill. St. B.A., 14 Bench and Bar No. 9 (Mar. 1984).) In this regard, it is worth reflecting on the fact that a prosecutor is the representative of all the people, including the defendant, and it is as much his duty to safeguard the constitutional rights of the defendant as those of any other citizen. (See *People v. Lampkin* (1983), 98 Ill. 2d 418, 430, 457 N.E.2d 50, 56; *People v. Oden* (1960), 20 Ill. 2d 470, 483, 170 N.E.2d 582, 588.) The duty of the prosecuting attorney is to seek justice, not merely to convict. (ABA Standards, The Prosecution Function 1.1(c) (1974); ABA Code of Professional Responsibility EC 7-13 (1979).) When a prosecutor systematically excludes blacks from jury duty solely because of their race, a practice which is condemned, he is not seeking justice. He is only seeking to convict. This is a clear violation of his ethical and professional duty.

There is another reason why we believe that this case should be disposed by published opinion rather than by an unpublished order. We note that the number of cases in which it is claimed that the State is using its peremptory challenges to systematically exclude blacks from juries solely because of their race continues to grow:

> *People v. Moore* (1984), 121 Ill. App. 3d 1159 (Rule 23), *appeal denied* (1984), 101 Ill. 2d 549; *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369; *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220; *People v. Cobb* (1983), 97 Ill. 2d 465, 455 N.E.2d 31; *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353; *People v. Diaz* (1984), 123 Ill. App. 3d 239, 462 N.E.2d 770; *People v. Woods* (1984), 122 Ill. App. 3d 176, 460 N.E.2d 880; *People*

*v. Kendricks* (1984), 121 Ill. App. 3d 442, 459 N.E.2d 1137; *People v. Pagliuca* (1983), 119 Ill. App. 3d 906, 458 N.E.2d 908; *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334; *People v. McHerron* (1983), 117 Ill. App. 3d 1022, 454 N.E.2d 331; *People v. Bonilla* (1983), 117 Ill. App. 3d 1041, 453 N.E.2d 1322; *People v. McKinley* (1983), 115 Ill. App. 3d 1095, 452 N.E.2d 43; *People v. Logan* (1983), 117 Ill. App. 3d 753, 453 N.E.2d 1317; *People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323; *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547; *People v. Gilliard* (1983), 112 Ill. App. 3d 799, 445 N.E.2d 1293, *rev'd* (1983), 96 Ill. 2d 544; *People v. Osborn* (1983), 111 Ill. App. 3d 1078, 444 N.E.2d 1158; *People v. Newsome* (1982), 110 Ill. App. 3d 1043, 443 N.E.2d 634; *People v. Turner* (1982), 110 Ill. App. 3d 519, 442 N.E.2d 637; *People v. Gosberry* (1982), 109 Ill. App. 3d 674, 440 N.E.2d 954, *rev'd* (1983), 93 Ill. 2d 544; *People v. Teague* (1982), 108 Ill. App. 3d 891, 439 N.E.2d 1066; *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, *rev'd* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202; *People v. Batteast* (1982), 105 Ill. App. 3d 1201 (Rule 23); *People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369; *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119; *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046; *People v. Mims* (1981), 103 Ill. App. 3d 673, 431 N.E.2d 1126; *People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243; *People v. Clearlee* (1981), 101 Ill. App. 3d 16, 427 N.E.2d 1005; *People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 427 N.E.2d 840; *People v. Tucker* (1981), 99 Ill. App. 3d 606, 425 N.E.2d 511; *People v. Allen* (1981), 96 Ill. App. 3d 871, 422 N.E.2d 100; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029; *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330; *People v. Attaway* (1976), 41 Ill. App. 3d 837, 354 N.E.2d 448; *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8; *People v. King* (1973), 54 Ill. 2d 291, 296 N.E.2d 731; *People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409; *People v. Petty* (1972), 3 Ill. App. 3d 951, 279 N.E.2d 509; *People v. Fort* (1971), 133 Ill. App. 2d 473, 273 N.E.2d 439; *People v. Butler* (1970), 46 Ill. 2d 162, 263 N.E.2d 89; *People v. Cross* (1968), 40 Ill. 2d 85, 237 N.E.2d 437; *People v. Dukes* (1960), 19 Ill. 2d 532, 169 N.E.2d 84; *People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809.

To appreciate the significance of the size of the above list, one should compare it with the first such list that appeared in *People v. Gosberry*

only a short time ago. (*People v. Gosberry* (1982), 109 Ill. App. 3d 674, 682, 440 N.E.2d 954, 960, *rev'd* (1983), 93 Ill. 2d 544.) The rapidly increasing size of the list of cases in which it is claimed that the State is using its peremptory challenges to systematically exclude blacks from jury duty solely because of their race has caused one supreme court justice to state:

> "In view of the staggering number of cases in this State raising this issue, I question whether it has not been established that prosecutors in Illinois have been purposely and systematically using peremptory challenges in case after case to achieve the exclusion of black persons from juries in a State having one of the largest populations of black persons in the nation." *People v. Gosberry* (1983), 93 Ill. 2d 544, 554 (Simon, J., dissenting).

For the foregoing reasons, we believe that defendant's contention that the State unconstitutionally used its peremptory challenges to systematically exclude blacks from the jury solely because of their race should not go unnoticed, and that the case should be reported as a published opinion. Racial discrimination within our criminal justice system is so plainly inimical to the American concept of fair trials and equal justice that we in the judiciary must expose its existence if it occurs to the end that our criminal justice system will be purged of discrimination by whatever legislative or judicial actions are necessary.

Accordingly, the judgment of conviction is reversed, and the case is remanded for a new trial.

Reversed and remanded.

McGILLICUDDY and WHITE, JJ., concur.

### Appendix 1

Here, we note that several different methods have been suggested for attacking the problem, including:

(1) Reduce the number of peremptory challenges that are presently permitted for both the prosecutor and the defendant. See *People v. Payne* (1983), 99 Ill. 2d 135, 140, 457 N.E.2d 1202, 1204 (Clark, J., specially concurring); *Legislature Receives Report of Chief Justice*, Ill. St. B.A., 14 Bench and Bar No. 9 (Mar. 1984). "[The] American Bar Association's year-old Standards Relating to Juror Use and Management call for lowered numbers of peremptory challenges because of the potential effect of *Swain*, among other reasons." Riley, *Selecting A Trial Panel: Whose Peers are They?*, Nat'l L.J., Feb. 20, 1984, at 1, 23. However, it should be noted that on April 26, 1976, the United

States Supreme Court entered an order recommending to Congress that the number of peremptory challenges permitted by the government and defendants be reduced but the recommendation was disapproved by Congress, and it never went into effect. See 18 U.S.C.A., Fed. R. Crim. P. 24(b) (Supp. 1984).

(2) Ban the use of peremptory challenges of prospective jurors by both the prosecution and defense in criminal cases. See report in Chicago Sun-Times, Feb. 18, 1983, at 16.

(3) Reduce the number of peremptory challenges for the prosecution substantially, but allow the defendant the same number of challenges that he is presently allowed. This would enable prosecutors to strike prospective jurors who might appear prejudiced against the State's interest, but would not provide prosecutors enough challenges to systematically exclude prospective jurors as a class solely because of their race. At the same time, the defendant would be assured that his right to obtain a jury from a fair cross-section of the community remains intact. The idea of allowing the prosecutor fewer peremptory challenges than the defendant is not novel. As an example, under Fed. R. Crim. P. 24(b), where the crime is punishable by more than one year's imprisonment, the defendant is allowed 10 peremptory challenges and the government only 6. Historically, in 1865 the defendant was permitted by statute 20 peremptory challenges in capital and treason cases while the government was permitted only 5. Under the same statute, for other crimes, the defendant was permitted 10 peremptory challenges while the government was permitted only 2. 13 Stat. 500 (1865). Shortly thereafter, the defendant was permitted 10 peremptory challenges in all noncapital felony cases, and the government was permitted only 3. 17 Stat. 282 (1872). Later, the defendant was permitted 20 peremptory challenges in capital and treason cases, while the government was permitted only 6. Under the same statute, in all other felony cases the defendant was permitted 10 peremptory challenges, while the government was permitted only 6. 36 Stat. 287 (1911).

(4) Abolish the State's right to peremptory challenges, but continue to allow the defendant to exercise peremptory challenges as has been done in England since 1305. See *People v. Payne* (1982), 106 Ill. App. 3 1034, 1039 n.4, 436 N.E.2d 1046, 1050 n.4, *rev'd* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

(5) Require the circuit court clerks to record the race and sex of prospective jurors so that it could be determined whether prosecutors are systematically excluding jurors solely because of their race or gender. Such a bill was defeated in the Illinois House on April 4, 1984. See Lang, *Chief Justice Ryan cites need for more defenders*, Chicago Trib-

une, Apr. 6, 1984, sec. 2, at 7.

(6) Allow the trial court judge to require the prosecutor to demonstrate that he is not systematically excluding prospective jurors solely because of their race, gender or ethnicity when it reasonably appears to the trial judge that the prosecutor is using his peremptory challenges for that reason. See *People v. Payne* (1982), 106 Ill. App. 3d 1034, 1040, 436 N.E.2d 1046, 1050, *rev'd* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202. "This is the same test as that used by the courts of California (*People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890), Massachusetts (*Commonwealth v. Soares* (1979), 337 Mass. 461, 387 N.E.2d 499, *cert. denied* (1979), 444 U.S. 881, 62 L. Ed. 2d 110, 100 S. Ct. 170), and New Mexico (*State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716) for regulating the use of peremptory challenges by State prosecutors, and courts in those States have had no apparent difficulty in applying it." *People v. Payne* (1982), 99 Ill. 2d 135, 149, 457 N.E.2d 1202, 1209 (Simon, J., dissenting). Commenting on this same procedure, one member of the United States Supreme Court, with approval of another member of the court, has stated: "Such a procedure * * * appears to be quite workable. The California courts have indicated no difficulty in applying it. See, *e.g., People v. Johnson*, 22 Cal. 3d 296, 148 Cal. Rptr. 915, 583 P.2d 774 (1978); *People v. Allen*, 23 Cal. 3d 286, 152 Cal. Rptr. 454, 590 P.2d 30 (1979) (trial court errs in failing to require prosecution to demonstrate non-racial basis for exclusion); *People v. Rousseau*, 129 Cal. App. 3d 526, 179 Cal. Rptr. 892 (1982) (trial court correctly concluded that defendant failed to establish prima case); *People v. Fuller*, 136 Cal. App. 3d 403, 186 Cal. Rptr. 283 (1982)," *McCray v. New York* (1983), 461 U.S. 961, 969, 77 L. Ed. 2d 1322, 1326, 103 S. Ct. 2438, 2443 (dissenting opinion of Marshall, J., joined by Brennan, J.).

(7) Pass legislation making it unlawful during the *voir dire* examination of jurors "to exclude jurors solely because of race, sex, or national origin." Editorial, *Trial by (White) Jury*, N.Y. Times, June 5, 1983, at 22E. Along this same line, in Brooklyn, New York, the District Attorney "has issued a directive to her staff that prohibits the use of peremptory challenges on the basis of race, religion, sex or national origin." Margolick, *State Court Upholds Peremptory Challenge to Jurors*, N.Y. Times, Dec. 19, 1982, at 23.

APPENDIX 2

Although the Illinois legislature has failed to do anything to address the problem of prosecutors using the State's peremptory challenges to systematically exclude black citizens from jury duty solely be-

cause of their race, the deep-felt concern of the public in Illinois and elsewhere is readily apparent. To illustrate:

(1) "Illinois Chief Justice Howard C. Ryan, in his annual report on the state's courts, made a suggestion we hope the general assembly will hasten to adopt. \*\*\* Ryan's suggestion [to reduce the number of peremptory challenges that are now allowed] may provide an avenue around this problem. At the very least, it's a start that we should make." Editorial, *A key to better juries*, Chicago Sun-Times, Feb. 7, 1984, at 31.

(2) "The state legislature should act on Chief Justice Ryan's suggestion [to reduce the number of peremptory challenges that are now allowed]." Editorial, *The chief justice's challenge*, Chicago Tribune, Feb. 14, 1984, sec. 1, at 12.

(3) "[I]t is time for the state legislature to review the whole practice of granting either party the right to challenge potential jurors without having to give a good reason. \*\*\* When a prosecutor, or for that matter a defendant, appears to be using the prerogative systematically to exclude blacks or women or low-income people from a jury, it gives the trial itself an unfortunate cast. Perhaps it is time to put a stop to the practice by eliminating the power, or to diminish the potential for abuse by reducing the number of challenges so that neither side can adopt a successful strategy of discriminatory exclusion." Editorial, *How to bias a jury*, Chicago Tribune, Apr. 29, 1983, sec. 1, at 20.

(4) "Must a judge sit by silent while a prosecutor does everything he can to keep blacks from serving on a jury? Yes, as the law now stands in most states. \*\*\* Well-meaning judges and lawyers condemn the blatant misuse of the peremptory strike but despair of finding a cure for subtler racism, more easily masked. Those difficulties are real but needn't divert attention from finding a remedy for racially invidious use of peremptory challenges.

"In explaining their votes against examining the issue at this time, three Supreme Court members said they would watch to see how the states deal with it. The best way for New York to do so is by law. Several bills pending in Albany would make it unlawful to exclude jurors solely because of race, sex or national origin. New York should not shrink from the Court's challenge. America's commitment to root out racism requires rooting out this exception to equal protection and fair trials." Editorial, *Trial by (White) Jury*, N.Y. Times, June 5, 1983, at 22E.

(5) "Should black jurors be excused from hearing cases just because they're black? Of course not. Yet that's been the pattern in Illinois in recent years, and the basis of more than two dozen appeals to

higher courts." Editorial, *Peremptory injustice*, Chicago Sun-Times, Apr. 25, 1983, at 27; see also Williams, *Ruling hits bias in jury exclusions*, Chicago Sun-Times, May 20, 1982, at 1.

(6) "A contemptible form of racism is still practiced in courtrooms all over the United States—in open daylight and with the knowledge and consent of judges and attorneys. We speak of the peremptory challenge ***. *** What is the solution? That's easy. Eliminate or radically modify the peremptory challenges, so that the judges, at least, can overrule a rejection that is obviously arbitrary or racist. *** Last week, the Illinois Court of Appeals failed to take action on this issue, claiming an alteration of the process should be handled by the state legislature. Alright then, let the legislature do the job. But by whatever means necessary, racism in the courts disguised as a legal propriety must be abolished." Editorial, *Racism in courtrooms*, Chicago Defender, Dec. 9, 1982, at 13.

(7) "[T]he discriminatory pattern of jury selection involves more than a denial of equal opportunity. The law says every accused person is entitled to a trial by his or her peers—those who presumably share one's language, lifestyle and basic experiences. Yet between the mass of blacks who wind up on trial in Chicago area courtrooms and the white suburbanites who judge them, there exists a vast gulf. One who has never lived in a ghetto is simply not a peer of the young man who has never lived anywhere else." Editorial, *Landmark decision*, Chicago Defender, June 1, 1982, at 9.

(8) Recently, two *nisi prius* judges were quoted respectively as follows in a major American newspaper about their experiences with the problem of prosecutors systematically excluding blacks from jury service in Illinois solely because of their race: (1) "It's an invidious discrimination," "morally reprehensible"; and (2) the practice is "blatant" and "offensive." Tybor, *Justice in black and white*, Chicago Tribune, May 22, 1983, sec. 19 (Perspective), at 1.

(9) "Other improvements to the court system will come through the association's attention to what [the president of the Cook County Bar Association] considers one of the largest problems facing blacks— their exclusion from juries. 'It's just a burning issue with us,' he said. 'It's not going to go away. . . The reason that it is so burning is that, when you look at it, it is the only area left where racial discrimination is still practiced openly. In the area of jobs. . .in the area of education, it would be unheard of.' " Tapp, *Bar chief to tackle 'burning' issues affecting blacks*, Chi. Daily L. Bull., June 20, 1984, at 1, 14.