THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIBERIUS MAYS, Defendant-Appellant.

First District (6th Division)   No. 1—90—0243

Opinion filed April 3, 1992.—Rehearing denied July 16, 1992.

Randolph N. Stone, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Robyn Berman, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a bench trial, defendant, Tiberius May, was convicted in the circuit court of Cook County of attempted murder, three counts of aggravated battery and armed robbery. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 9—1(a), 12—4, 18—2.) The trial court thereafter sentenced defendant to a 50-year term for attempted murder under the extended-term provision (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(2)), and a consecutive 15-year term for armed robbery. On appeal, defendant challenges his conviction and sentence, and raises the following issues for our review: (1) whether defendant's statement was voluntary; (2) whether the State's impeachment by prior convictions was proper; (3) whether the State proved defendant guilty of attempted murder beyond a reasonable doubt; and (4) whether defendant's sentences were proper.

Defendant filed a pretrial motion to suppress, claiming that his statements to the police and assistant State's Attorney resulted from physical coercion and threats and were, therefore, involuntary. For trial purposes, the parties stipulated to all of the testimony heard on the motion to suppress. The facts in this case, with the exception of defendant's allegation of police brutality, are substantially undisputed.

On November 4, 1987, at about 2 a.m., defendant beat John Sarnicki with a metal pipe until he was unconscious, then took his wallet. Defendant gave a court-reported statement at the police station, which is summarized as follows: While walking on a street in Chicago, defendant saw a city tow truck. After the driver exited the truck, and refused defendant's offer of assistance, defendant struck him on the head with a 15- to 16-inch hollow, metal pipe. When the victim fell to the ground face-up, defendant hit him twice in the head

and mouth, turned him over, and removed his wallet. Defendant fled the scene and dropped the pipe in some water. He then went to an empty apartment where he tried to stuff the wallet in the toilet and hide the credit cards under a radiator. He threw his bloodstained sweater in the stairwell of the apartment building, then fell asleep. Two officers entered the apartment, woke him up, asked him his name, and hit him when he denied involvement in the incident. After one of the officers retrieved the wallet from the toilet, defendant showed them where he hid the credit cards. He agreed to return to the scene with the officers. He concluded his statement by stating that the assistant State's Attorney and the detectives treated him fairly and allowed him to use the telephone.

Defendant testified in his own behalf at the hearing on the motion and by way of stipulation at trial. When the police arrived at the vacant apartment at about 2 a.m., he was "very intoxicated" and "very groggy." Between 11 p.m. and 12 a.m., he drank two one-half pints of gin, and smoked marijuana and cocaine. After the officers learned his name, they kicked him, and then hit him in the stomach after they searched the apartment. Defendant stated that the officers threatened "to do this and that" if he didn't cooperate with them. Defendant stated that he spoke with Detective Jaglowski at the police station, and when he denied any involvement, Jaglowski hit him in the stomach three or four times and threatened to continue if he did not cooperate. He requested a public defender several times, but was refused. He also stated that Jaglowski did not read him his rights. According to defendant, when Evelyn Clay, the assistant State's Attorney, arrived, he asked for a lawyer and for permission to use the telephone. Clay refused to get him an attorney, then left when defendant stopped talking to her. Clay returned a few hours later with a court reporter. He stated that he told Clay that the police had hit him, and that she "cut [him] off in the statement." Defendant claimed that he was "very high," groggy and "somewhat tired" when he gave the statement. On cross-examination, defendant admitted that he told Clay he was treated fairly and was allowed to use the telephone. He claimed that he told a paramedic about his stomach pains when he first arrived at the Cook County jail, but that the paramedic found "nothing real bad." He testified that he requested a doctor 30 to 40 times, but was never treated for stomach injuries nor had he seen a doctor. Defendant stated that he had two prior convictions in 1986, one for theft and one for possession of a controlled substance.

Lonnie Williams, a hotel switchboard operator, testified that defendant entered the hotel at about 1:30 a.m. on the night of the

beating. Defendant, whom Williams had known for several years, was "tipsy, smelling of marijuana and beer." About one hour later, a man entered the hotel and said, "Look at this guy beating up on this tow truck driver." Williams went outside and saw defendant across the street with a crowbar in his left hand several feet from a person lying on the ground. Williams saw defendant walk across the lot, pick up a piece of paper and wipe off the crowbar. Williams telephoned the police twice. When the police arrived defendant was gone, but Williams gave them defendant's name.

By way of stipulation, it was established Darnell Jackson would testify that at about 2:40 a.m. on the morning of the incident, he and a friend were walking and saw a city tow truck. Next to the tow truck, they saw the victim on his back bleeding severely from the head. Jackson used the radio in the tow truck to call an ambulance and waited several minutes until the police arrived.

Officers Michael Decker and Edward Dolan of the Chicago police department gave substantially identical testimony. When they arrived at the scene, they saw the victim lying on the ground next to the tow truck. The victim was unable to respond to questions and was taken by ambulance to the hospital. The officers spoke with Williams, who gave them defendant's name, and Larry Parker, a hotel resident, who took them to the apartment of Doris Mays, defendant's sister. Mays directed the officers to a vacant apartment in her building where defendant sometimes slept. The officers found defendant sleeping on the floor near the open door, woke him up, and arrested him. They read him his rights which he stated that he understood. Dolan found a wallet inside the toilet which contained a slip of paper with a City of Chicago tow pound number on it. Defendant told the officers that he "got the wallet from the tow driver on Lake Street." Defendant said that he hit the victim over the head with a pipe, and then showed the officers a radiator under which he hid the remaining contents of the victim's wallet. Defendant returned to the scene and led the officers to the pipe. Both officers testified that they did not strike or threaten defendant at any time. Dolan described defendant as "somewhat calm. Very articulate. Not very excitable. He was fine." Defendant did not appear drunk, nor did he tell the officers that he was drunk or tired.

Detective Allen Jaglowski testified for the State that he spoke with defendant at the scene at about 6 a.m., and later that morning at the police station. Defendant told Jaglowski that he was walking down the street and tried to engage the tow truck driver in conversation. When the driver did not respond, defendant beat him with a

dumbbell handle and took his wallet from his pocket. Defendant identified the wallet, the credit cards and the dumbbell handle. Jaglowski testified that neither he nor any other officer hit or threatened to hit defendant if he did not cooperate. Nor did defendant complain to Jaglowski of any mistreatment or stomach pains. Jaglowski stated that defendant spoke with Assistant State's Attorney Evelyn Clay for several hours in his presence and gave the statement. Although Clay did not testify, the parties stipulated that Clay did not question defendant about his claim of police mistreatment in his statement.

The State introduced by stipulation the testimony of Dr. John Shea, a neurosurgeon at McGaw Hospital, that when the victim, who was not breathing, was brought to the hospital, he had four large lacerations to his head and was not expected to survive the remainder of the day. Shea performed a life-saving operation and removed 25% of the victim's brain which had been damaged. The victim remained in a coma for eight days and was hospitalized for six months. The victim is unable to speak, is deaf in one ear, and has limited vision as a result of the injuries.

The parties also stipulated that the paramedic who interviewed defendant on the day of the arrest would testify that defendant told him he had no complaints about his physical condition and that his health was good.

The trial court denied defendant's motion to suppress, finding that defendant intentionally attempted to ruin his statement by claiming police brutality. The court also found that defendant was not intoxicated at the time of the beating, although there was some evidence of substance abuse in his past. The court found defendant guilty of attempted first degree murder, armed robbery and aggravated battery. At the sentencing hearing, the trial court heard evidence in aggravation and mitigation. The court subsequently found defendant eligible for an extended and a consecutive term, and sentenced him to a 50-year term for the attempted murder charge and a consecutive 15-year term for armed robbery.

Initially, we consider defendant's contention that his post-arrest statements resulted from physical coercion and threats and were, therefore, involuntary. In this regard, defendant claims that the trial court improperly denied his motion to suppress.

We will not set aside a trial court's ruling on a motion to suppress unless it is clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) Nor will we substitute our judgment for the trier of fact when the evidence is merely conflicting. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) It is the trier of fact's function to de-

termine the credibility of witnesses, the weight given to their testimony and the inferences to be drawn from the evidence. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) It is also the trial court's function to judge the voluntariness and admissibility of a confession. (*People v. Hooper* (1989), 133 Ill. 2d 469, 552 N.E.2d 684.) A confession resulting from the use of force is not admissible, and when it is "conceded or clearly established" that defendant received injuries while in police custody, the State bears the burden of establishing the cause of such injuries by clear and convincing evidence. *People v. Hooper*, 133 Ill. 2d at 496-97, 552 N.E.2d at 695; *People v. Wilson* (1987), 116 Ill. 2d 29, 40, 506 N.E.2d 571, 576.

We find *People v. Hooper* and *People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123, instructive here. In each case, our supreme court rejected defendant's claim where no evidence established that defendant was injured while in police custody. In *Hooper*, the court determined that neither the photographs nor defendant's "general appearance" supported the claim of injury. The court noted that although defendant was treated subsequent to his arrest for a cut on his ankle, the testimony did not support his claim that he received such injury while in police custody. (*Hooper*, 133 Ill. 2d at 497, 552 N.E.2d at 695.) In *Clark*, defendant sustained "a blunt trauma to the neck and chest," which defendant claimed he received when he was "kicked all over." The supreme court rejected defendant's claim, finding that defendant did not demonstrate when the injury occurred and showed no signs of physical impairment while in custody. (*Clark*, 114 Ill. 2d at 458-59, 501 N.E.2d at 127.) Like *Hooper* and *Clark*, the evidence here does not support defendant's claim that he was injured while in police custody. Defendant did not complain of pain or discomfort during his interview at the police station, nor did he mention police misconduct apart from the single, isolated comment in his statement. Moreover, when asked specifically about his health following his arrest, defendant told the paramedic that he was healthy and had no complaints.

*People v. Banks* (1989), 192 Ill. App. 3d 986, 549 N.E.2d 766, relied upon by defendant, is inapposite. In *Banks*, this court held that the trial court should have suppressed defendant's confession as involuntary where medical testimony supported defendant's claim of police brutality. Unlike here, the evidence of defendant's injury in *Banks* was clear. Medical testimony established that defendant sustained numerous injuries, including lacerations, bruises, scrapes, discolorations and swelling. Moreover, the examining doctor testified that such injuries supported defendant's theory of police brutality. In contrast to

*Banks,* no evidence here established that defendant suffered any injury while in police custody. (*Cf. People v. Sloss* (1952), 412 Ill. 61, 104 N.E.2d 807.) Indeed, the parties stipulated that defendant told a paramedic on the day of his arrest that his health was good and that he had no complaints. Nor did defendant at any time receive treatment for his alleged injuries. Defendant's single reference that the police hit him was contradicted by Officers Dolan, Decker and Jaglowski, who each denied involvement in or knowledge of defendant being hit. (*Cf. People v. Cunningham* (1964), 30 Ill. 2d 433, 197 N.E.2d 40.) After hearing this conflicting evidence, the trial judge expressly rejected defendant's testimony as incredible. We will not substitute our judgment for that of the trial judge when the evidence is conflicting, as here. Moreover, defendant spoke openly about the events which led to the arrest (*People v. Clark* (1986), 114 Ill. 2d 450, 501 N.E.2d 123), and according to Jaglowski, defendant appeared alert and coherent when he gave his statement. During the interview with Clay, which lasted several hours, defendant did not complain of pain. When we consider the totality of the circumstances surrounding defendant's statement (*People v. Cages* (1980), 82 Ill. App. 3d 900, 403 N.E.2d 565), we find ample evidence to support a finding that defendant made the statement voluntarily.

■ We also reject defendant's argument that the assistant State's Attorney's failure to investigate the claim of police misconduct denied defendant due process, and his reliance on *People v. Frazier* (1984), 127 Ill. App. 3d 151, 469 N.E.2d 594, for this proposition. In *Frazier,* this court stated that *"[i]n this regard,* \*\*\* a prosecutor is the representative of all the people, including the defendant, and it is as much his duty to safeguard the constitutional rights of the defendant as those of any other citizen." (Emphasis added.) (*Frazier,* 127 Ill. App. 3d at 156, 469 N.E.2d at 598.) At issue in *Frazier* was whether the prosecutor systematically excluded black jurors. Such systematic exclusion by the State is *per se* unconstitutional, and "a clear violation of [a prosecutor's] ethical and professional duty." (*Frazier,* 127 Ill. App. 3d at 156, 469 N.E.2d at 598.) By contrast, Clay's decision not to investigate here was not a *per se* unconstitutional, affirmative act. Moreover, when she interviewed defendant, defendant did not complain of police mistreatment, except for the isolated reference, nor appear to be injured or in physical discomfort. Defendant responded affirmatively when asked if the detectives and the assistant State's Attorney treated him well. We cannot say that Clay's failure to investigate defendant's allegation that the police hit him, in light of the other contradictory evidence, constituted a denial of due process. For

all of the above reasons, we find defendant's statement voluntary and find that the trial court's denial of the suppression motion was supported by the manifest weight of the evidence.

Defendant next contends that he was not proved guilty of attempted murder beyond a reasonable doubt because he intended only to rob the victim, not to kill him. In addition, defendant argues that the State improperly carved two offenses out of a single act in violation of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

When a defendant claims that he was convicted with insufficient evidence, the evidence must be reviewed in a light most favorable to the prosecution and the court must determine whether any rational trier of fact could have found defendant guilty of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) To sustain an attempted murder conviction, the State must show that the accused acted with the specific intent to kill. (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a); *People v. Mitchell* (1991), 209 Ill. App. 3d 562, 568 N.E.2d 292.) Because intent is a state of mind which can rarely be proved by direct evidence, intent may be inferred from the character of the assault, and the use of a deadly weapon. (*People v. Starks* (1989), 190 Ill. App. 3d 503, 546 N.E.2d 71; *People v. Tyler* (1989), 188 Ill. App. 3d 547, 544 N.E.2d 1077.) Moreover, the nature and seriousness of the injury may be considered in assessing whether the incident amounted to an attempted murder. (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) It is the function of the trier of fact to determine the existence of the requisite intent, and such determination will not be disturbed on appeal unless reasonable doubt exists as to defendant's guilt. *People v. Myers* (1980), 83 Ill. App. 3d 1073, 404 N.E.2d 1082.

■■ We believe that the evidence in this case, when viewed in the light most favorable to the prosecution, is sufficient to support a finding of guilty of attempted murder beyond a reasonable doubt. Defendant gave a detailed account of his beating of the victim. Defendant admitted that he struck the victim in the head from behind several times with a 15- to 16-inch pipe, which he concedes on appeal is a "deadly weapon." Defendant then continued to hit the unarmed victim even after he fell to the ground and defendant saw that he was bleeding. The victim did not instigate the attack or resist in any way. Moreover, defendant's intent to kill may be inferred from the seriousness of the victim's injuries. The stipulated medical testimony established that the victim's injury was life-threatening and required emergency surgery. (*People v. Tyler* (1989), 188 Ill. App. 3d 547, 544 N.E.2d 1077.) The question of intent was for the trier of fact (*People*

*v. Starks* (1989), 190 Ill. App. 3d 503, 546 N.E.2d 71), and based upon the foregoing, we cannot say that the trial court's express finding that defendant specifically intended to kill the victim was error. We therefore will not reverse defendant's attempted murder conviction.

■ Nor do we believe, as defendant claims, that the State improperly carved two offenses out of a single act in violation of *People v. King.* Attempted murder and armed robbery are based upon separate acts which each require proof of different elements. (*People v. Camacho* (1979), 71 Ill. App. 3d 943, 389 N.E.2d 1213.) The record shows that defendant used force to steal the victim's wallet and thus substantiates the armed robbery conviction. As indicated above, we believe that the State also provided sufficient evidence to prove attempted murder beyond a reasonable doubt. For these reasons, we reject defendant's claim that his conduct may support only one conviction.

■ We decline to address defendant's claim that the State improperly impeached defendant at the suppression hearing by failing to introduce certified statements of conviction, and by using a conviction based upon a probation violation. (Ill. Rev. Stat. 1987, ch. 56½, par. 1410.) To preserve error for review defendant must object both at trial and by post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Any error in proving a prior conviction during cross-examination is waived if not raised at the time such information is elicited. (*People v. Preston* (1978), 61 Ill. App. 3d 434, 378 N.E.2d 372.) Defendant here failed to object to this testimony at trial and did not raise this issue in his post-trial motion. We, therefore, find that defendant waived this issue, and we, accordingly, decline to address it.

Defendant next claims various errors in sentencing. At the sentencing hearing, defendant presented evidence that he was an educated and intelligent person who subsequently turned to drugs. Defense counsel also pointed to defendant's lack of a prior violent criminal record, his remorse and his potential for rehabilitation. Defendant stated that he felt he was being victimized because he is black and the victim is white. Defendant was 26 years old at the time of the crime. The State presented the following factors in aggravation: the brutality of the attack; defendant's two prior convictions for possession of a controlled substance and theft; the nature of the injuries suffered; and the impact on the victim's family.

The trial judge described defendant's conduct as "one of the most wantonly brutal and heinous that [he] had ever seen as a prosecutor, as a defense attorney, or as a judge in over 30 years in this business." The judge also stated as follows:

"You had everything in the palm of your hand, but you chose to put it up your nose and ingest vile drugs. Well, this is what happens. You brought it upon yourself.
* * *

I find you to be a totally reprehensible individual. Unlike most of the people who appear before this Court, you had the abilities and you had the chance and you chose to throw them away."

The judge found defendant eligible for an extended term and a consecutive term. Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—2(a)(2), 1005—8—4(a).

It is well settled that the imposition of a sentence is a matter of judicial discretion which this court will not disturb on appeal absent an abuse of discretion. (*People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.) In determining the appropriate sentence, a court must consider all factors in aggravation and in mitigation, and balance them against each other. (*People v. Berry* (1988), 175 Ill. App. 3d 420, 529 N.E.2d 1001.) A trial court's sentence is entitled to great deference and weight on appeal because it is in a better position than a reviewing court to determine a proper sentence. *People v. Felella* (1989), 131 Ill. 2d 525, 546 N.E.2d 492.

■ Defendant contends that the trial court improperly imposed a consecutive sentence because defendant was prosecuted for more than one offense arising out of a single episode. We disagree. Section 5—8—4(a) of the Unified Code of Corrections (the Code) states in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, *unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, * * * in which event the court may enter sentences to run consecutively.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a).)

As this statutory provision indicates, the trial court may impose a consecutive sentence if a defendant is convicted of a Class X felony and if he inflicted severe bodily injury. (*People v. Buford* (1988), 178 Ill. App. 3d 329, 533 N.E.2d 472.) Defendant here was convicted of armed robbery, a Class X felony (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(b)), and he inflicted serious bodily injury by repeatedly hitting the victim in the head. Indeed, the stipulated medical testimony established that the injuries required removal of 25% of the victim's brain,

and that the victim could not speak, was deaf in one ear and had limited vision as a result of the injuries. Therefore, whether defendant's criminal objective changed throughout the incident is irrelevant because defendant's conviction and the conduct surrounding the armed robbery satisfied the statutory exception to the "substantial change" requirement. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(a).

We also reject defendant's related claim that the trial court's failure to state in the record its opinion that a consecutive term was necessary to protect the public renders the consecutive sentences improper. The relevant provision states as follows:

"(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—4(b).)

We believe that the reasons set forth in the record satisfy its requirements. Prior to sentencing, the trial judge described defendant's behavior as "absolutely horrendous" and "the most wantonly brutal and heinous" that he had seen in 30 years. Moreover, after imposing sentences totalling 65 years, the trial judge stated that defendant "won't be released a day too soon as far as I'm concerned." Nothing in the statute requires the court to recite particular language in imposing consecutive sentences (*People v. Lewis* (1988), 175 Ill. App. 3d 156, 529 N.E.2d 752), and we believe that the trial judge's strong comments indicate his opinion that the need for public protection warranted a consecutive term. Moreover, the record demonstrated that the court considered defendant's prior convictions. (*People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.) As to the sufficiency of reasons set forth in the record for a consecutive sentence, we will not substitute our judgment for that of the sentencing court. *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836.

Defendant claims that the extended-term sentence was excessive on the grounds that defendant's criminal conduct here was not exceptionally brutal or heinous. Section 5—8—2(a)(2) of the Code provides that an extended-term sentence may be imposed when a defendant is convicted of any felony and the "court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2)). In evaluating the brutality and heinousness of the offense, the court will consider all of the circumstances surrounding the incident. (*People*

*v. Hall* (1987), 164 Ill. App. 3d 770, 518 N.E.2d 275; *People v. Buford* (1988), 178 Ill. App. 3d 329, 533 N.E.2d 472.) A showing that defendant inflicted torture or unnecessary pain is not a prerequisite to finding brutal or heinous behavior. (*People v. Barfield* (1989), 187 Ill. App. 3d 190, 543 N.E.2d 812.) Our supreme court in *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, emphasized that the basis for the extended-term sentence is to ensure that punishment is appropriately based upon the particular circumstances of the case, and to ensure that society is protected from people whose conduct demonstrates a capacity to commit particularly brutal or heinous crimes. *La Pointe*, 88 Ill. 2d at 500-01, 431 N.E.2d at 352-53.

In *People v. Barfield* this court upheld the imposition of an extended sentence, finding defendant's conduct indicative of wanton cruelty. In *Barfield*, codefendants intended to rob the victim. After the victim was thrown to the floor, defendant shot the victim in the head, waited awhile, then shot him in the head again. Defendant ran from the scene and hid the weapon. This court upheld the extended sentence, characterizing defendant's conduct as "a cold-blooded attack upon a person who was on the ground and defenseless." (*Barfield*, 187 Ill. App. 3d at 203, 543 N.E.2d at 819.) This court found it significant that defendant showed no remorse for his conduct, but rather "defendant ran from [the scene] and made no attempt to help the victim. Defendant went home and attempted to hide the murder weapon." *Barfield*, 187 Ill. App. 3d at 203, 543 N.E.2d at 819.

In the present case, defendant admitted that he hit the unarmed victim in the head from behind with a metal pipe, then continued to inflict blows to the head and face even after the bleeding victim fell to the ground. As in *Barfield*, defendant made no attempt to help the victim, who was not conscious or breathing when paramedics arrived. Defendant here, as in *Barfield*, tried to hide the weapon and went home. See also *People v. Gutierrez* (1985), 136 Ill. App. 3d 774, 791, 483 N.E.2d 944, 955 (extended term warranted where defendant shot victim from behind while victim was "minding his own business"); *People v. Eckles* (1980), 83 Ill. App. 3d 292, 404 N.E.2d 358 (extended term warranted where defendant shot the victim twice, then four more times after she fell to the ground).

Nor does this result conflict with *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025, and *People v. Lucas* (1989), 132 Ill. 2d 399, 548 N.E.2d 1003, as defendant claims. In reversing and remanding defendant's extended-term sentence in *Andrews*, our supreme court relied on the following facts: defendant's prior convictions, theft and burglary, were not crimes of violence; defendant's lack of intent

to kill the victim prior to the crime; and defendant's sincere expression of remorse at the sentencing hearing. (*Andrews*, 132 Ill. 2d at 466, 548 N.E.2d at 1032.) *Andrews* is inapposite because the record here did not conclusively establish defendant's lack of intent to kill the victim prior to the crime. Moreover, the trial judge here apparently did not find defendant's remorse sufficiently persuasive. *Lucas* addressed whether the circumstances surrounding the victim's death were exceptionally brutal or heinous and indicative of wanton cruelty to support the death penalty under section 9—1(b)(7) of the Criminal Code of 1961. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(7).) Because *Lucas* involved a different statutory provision, we find it unpersuasive here.

Lastly, defendant argues that the trial court erred in sentencing defendant by not giving proper consideration to mitigating facts and the possibility of defendant's rehabilitation. We disagree. The record reflects that the trial court heard the factors in aggravation and mitigation. After giving adequate consideration to these factors, the court felt that the extreme brutality justified the imposition of an extended term for attempted murder and a consecutive term for armed robbery. We do not believe that the sentence reflects an abuse of judicial discretion, and we find no error requiring reversal.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.