2020 IL App (1st) 180665-U

SIXTH DIVISION
June 5, 2020

No. 1-18-0665

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 11440 |
| | ) | |
| WITOLD WOJCIK, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Cunningham and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's five convictions for aggravated cruelty to a companion animal are affirmed over his contention that the State failed to prove him guilty beyond a reasonable doubt. Defendant's convictions did not violate the one-act, one-crime principle where he was charged with and convicted of causing five distinct injuries to two different animals.

¶ 2    Following a bench trial, defendant Witold Wojcik (or Wojick, the record is unclear) was convicted of five counts of aggravated cruelty to a companion animal (510 ILCS 70/3.02(a) (West 2016)) and sentenced to five concurrent terms of 18 months in prison. On appeal, he argues that the State failed to prove his guilt beyond a reasonable doubt and that three of his five convictions

must be vacated under the one-act, one-crime principle because the State did not show that those three convictions arose from separate physical acts. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Mr. Wojcik was charged by indictment with nine counts of aggravated cruelty to a companion animal. Counts 1 through 5 charged Mr. Wojcik with intentionally causing specified injuries to a companion dog named Jacky, and counts 6 through 9 charged Mr. Wojcik with intentionally causing specified injuries to a companion dog named Amik. The court found Mr. Wojcik guilty of counts 1, 2, 3, 7 and 9. As relevant here, those counts alleged that Mr. Wojcik intentionally caused: Jacky three broken ribs (count 1), a fractured left head of the femur (count 2), and a hairline fracture in the tibia (count 3); and Amik a humeral fracture (count 7) and a femoral fracture (count 9).

¶ 5    At trial, Marta Zurek testified, through a Polish interpreter, that Mr. Wojcik was her fiancé and they had been together for 18 years. They lived together in a split-level home that had two sets of stairs. One set of stairs had about nine steps going up and the other had five steps going down. In May 2015, Ms. Zurek and Mr. Wojcik had two mini Schnauzer puppies, Jacky and Amik, who were four months old.

¶ 6    Ms. Zurek worked from 5 p.m. until 1 a.m. and Mr. Wojcik worked from about 6 a.m. until 6 or 7 p.m. No one besides Ms. Zurek and Mr. Wojcik took care of the dogs and no one else had keys to their house. On May 22, 2015, when Ms. Zurek left for work, the dogs were "fine," and Mr. Wojcik was not home at that time. Later that day, Mr. Wojcik called Ms. Zurek and told her that the dogs had fallen down the stairs and were lying down "crying." Mr. Wojcik took the dogs to the veterinarian. Ms. Zurek then took the dogs to her regular veterinarian and then to another veterinarian, Premier, where the dogs were x-rayed.

¶ 7    On May 26, the dogs' condition was improving. Ms. Zurek explained that Amik was dragging his leg but seemed better and Jacky was able to go up and down stairs. That night, Ms. Zurek was at work when Mr. Wojcik again called and said "something was happening" with the dogs. The dogs seemed sleepy and one was not walking. The next morning, Ms. Zurek took the dogs back to her regular veterinarian and took Amik to Premier. Jacky was euthanized due to his injuries.

¶ 8    Three treating veterinarians testified at trial. The parties stipulated that all three were experts in the field of veterinary medicine.

¶ 9    Dr. Amado Martin testified that on May 21, 2015, he examined the dogs when they were brought in for their regular vaccinations. Amik weighed 9 pounds, and Jacky weighed 12 pounds. Both dogs were in good health and standard height and weight.

¶ 10    The next day, two men brought Amik and Jacky back to the clinic. Dr. Martin identified Mr. Wojcik in court as one of these men. Dr. Martin observed that Jacky had "back leg injuries, multiple trauma, couldn't walk and [was] bleeding through the nose and ear." Amik's front leg was visibly broken and he was also "bleeding through the nose and ears." Based on their injuries, Dr. Martin recommended that the dogs be taken to Premier Group. In Dr. Martin's opinion, "blunt trauma" could have caused the bleeding from the dogs' ears and nose.

¶ 11    On May 26, 2015, Ms. Zurek brought the dogs back to Dr. Martin's clinic. Both dogs were "more alert" than when Dr. Martin had seen them on May 22. The dogs did not have any new injuries on that day. However, the next day, May 27, Ms. Zurek brought the dogs to Dr. Martin's clinic again. At that time, Jacky was "comatose." He was bleeding from the nose and there was fresh blood in the ear. He was "breathing very slow and a downer, he couldn't get up." Dr. Martin explained that the difference in Jacky's condition from May 26 to May 27 was "[o]n a scale of one

to ten, a ten." The fresh blood on May 27th indicated that Jacky had suffered additional "[b]lunt trauma, more serious than the 22nd." Amik also had "fresh blood in the nose and the ears" on May 27, and he was "much worse than the previous injury on the 22nd." Dr. Martin explained that Amik and Jacky's injuries on May 27th were new injuries, not progressive injuries from May 22nd. Dr. Martin stated that the dogs' injuries could not have been caused by falling down the stairs.

¶ 12    Dr. Kristen Hafemann worked at Premier and examined Amik on May 27, 2015. Amik could not walk and a physical examination revealed that he had "at least *** two fractured limbs." His right pelvic limb and his right forelimb were both fractured. Dr. Hafemann gave Amik pain medication and took x-rays of his injuries, which the State introduced into evidence. The x-rays showed that Amik had a "very obvious femoral fracture" of the big thigh bone of the right leg, in front of the knee, and a "complete fracture of the distal epicondyle of the humerus," which was located at the top of the front right leg. Based on these injuries, Dr. Hafemann recommended that Amik be hospitalized and evaluated by an orthopedic surgeon. Dr. Hafemann explained that "a great deal of force" would have been required to cause Amik's injuries because "[t]hose are the biggest bones in the dog's body." Dr. Hafemann did not believe Amik's injuries could have been caused by falling down stairs.

¶ 13    On May 22, 2015, Dr. Kimberly Podlecki examined Jacky, who "was unable to walk on his left hind leg, was having some difficulty breathing and also had bleeding from the nose." Dr. Podlecki took x-rays, which the State introduced into evidence. The x-rays of Jacky's pelvis and hind legs showed multiple fractures through his femur, including a fracture to the distal femur of Jacky's left hind leg. A chest x-ray showed that Jacky's first four ribs were broken on the left side of his chest. The chest x-ray also showed discoloration of the lungs, which indicated "bruising or hemorrhage in the lungs[,]" as well as fluid and air on the left side of Jacky's chest cavity, which

would usually result from "some sort of trauma."

¶ 14    Dr. Podlecki testified that Jacky's injuries were caused by "blunt force trauma," including "an extremely strong kick and multiple times." She explained that it would be difficult to fracture the femur because "the femur is a very strong bone in the body." In Dr. Podlecki's opinion, a substantial fall could have caused Jacky's injuries, but by "substantial" she meant a fall from "at least a second story, such as like a balcony or something or higher or at least a full flight of stairs, if not more." She would not expect to see the combination of injuries that Jacky sustained from falling down nine stairs. Dr. Podlecki also examined Amik on May 22, 2015. She found that Amik had difficulty walking on his left front leg. She did not observe that Amik had a skull fracture, a humeral fracture, any broken ribs, or any femoral fractures that day.

¶ 15    The State rested and the defense moved for an acquittal. The court entered findings of not guilty on counts 6 and 8. Mr. Wojcik rested and, at the conclusion of trial, the court entered findings of not guilty on counts 4 and 5, finding the evidence did not show those specific injuries beyond a reasonable doubt. The court found Mr. Wojcik guilty of causing the injuries specified in counts 1, 2, 3, 7, and 9, and entered findings of guilty on those counts. In finding Mr. Wojcik guilty, the court noted the State established that the dogs were under Mr. Wojcik's care and control. The court rejected Mr. Wojcik's theory that the dogs might have fallen down the stairs, finding it was inconsistent with the dogs' injuries, stating, "[w]hat a coincidence that must be, the two clumsy dogs on the same day fall down the stairs and they end up with broken limbs." The court noted that the dogs "suffered severe trauma" and the doctors were "very clear" that "a great deal of force, blunt force trauma inflicted these injuries to these animals. It wasn't a fall from the stairs."

¶ 16    The court denied Mr. Wojcik's motion for a new trial based on a challenge to the sufficiency of the evidence. Following a hearing, the court sentenced Mr. Wojcik to 18 months'

imprisonment on each of the five counts of aggravated cruelty to a companion animal, with all sentences to be served concurrently.

¶ 17                                                    II. JURISDICTION

¶ 18     Mr. Wojcik's motion to reconsider the denial of his motion for a new trial was denied on March 28, 2018, and he filed his timely notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014), governing appeals from final judgments of conviction in criminal cases.

¶ 19                                                    III. ANALYSIS

¶ 20     On appeal, Mr. Wojcik first argues that the State failed to prove his guilt beyond a reasonable doubt because it did not show that he was the person who caused the injuries to the dogs or that he had the specific intent to injure the dogs.

¶ 21     The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). This standard applies to all criminal cases, whether the evidence is direct or circumstantial. *People v. Herring*, 324 Ill. App. 3d 458, 460 (1st Dist. 2001). It is up to the trier of fact to determine the witness's credibility, the weight given to their testimony, to resolve conflicts in the evidence, and to draw all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). All reasonable inferences must be allowed in favor of the State. *People v. White*, 2017 IL App (1st) 142358, ¶ 14. In determining whether an inference is reasonable, the trier of fact need not look for all possible explanations consistent with innocence or "be satisfied beyond a reasonable doubt as to each link in the chain of circumstances." *People v. Smith*, 2014 IL App

(1st) 123094, ¶ 13 (quoting *Wheeler*, 226 Ill. 2d at 117). Instead, it is sufficient if all of the evidence, taken as a whole, satisfies the trier of fact that the defendant is guilty beyond a reasonable doubt. *Smith*, 2014 IL App (1st) 123094, ¶ 13. While we will consider all of the evidence, we will not retry the defendant on appeal. See *Wheeler*, 226 Ill. 2d at 117; *People v. Evans*, 209 Ill. 2d 194, 209 (2004). Accordingly, we will not overturn a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *People v. Brown*, 2013 IL 114196, ¶ 48; *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 22    In order to sustain Mr. Wojcik's conviction for aggravated cruelty to a companion animal, the State was required to prove beyond a reasonable doubt that he intentionally committed an act that caused a companion animal to suffer serious injury. 510 ILCS 70/3.02(a) (West 2016). Mr. Wojcik argues that the State failed to prove that he caused the dogs' injuries or that he acted with the requisite intent.

¶ 23    Because intent is a mental state, it can rarely be proven by direct evidence. *People v. Williams*, 165 Ill. 2d 51, 64 (1995); *People v. Lee*, 2015 IL App (1st) 132059, ¶ 53; *People v. Witherspoon*, 379 Ill. App. 3d 298, 307 (2008). Illinois courts have long recognized that circumstantial evidence, "including the character of the assault and the nature and seriousness of the injury," is often the only way to prove a defendant's intent to commit a crime. *Williams*, 165 Ill. 2d at 64 (citing *People v. Mays*, 230 Ill. App. 3d 748, 756 (1992)); see *People v. Robards*, 2018 IL App (3d) 150832, ¶ 14.

¶ 24    After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that Mr. Wojcik intentionally caused the dogs' injuries where the evidence presented showed that both dogs received serious injuries, on two separate occasions, while they were in Mr. Wojcik's care. At trial, the State presented evidence that the dogs were fine

when Ms. Zurek left for work at 5 p.m. on May 22. No one besides Mr. Wojcik lived in the house, had keys, or took care of the dogs. After Mr. Wojcik got home from work that evening, he called Ms. Zurek and told her the dogs were "lying down crying." Dr. Martin, the dogs' regular veterinarian, referred the animals to another facility due to the severity of their injuries. Then, on May 27, when Mr. Wojcik was again alone with the dogs, he called Ms. Zurek and told her "something was happening" with the dogs. The dogs, who had been recovering from their previous injuries, now had new injuries that, according to Dr. Martin, were "much worse than the previous injury" and the difference compared to the day before, "on a scale of one to ten, [was] a ten." At that time, both dogs had fresh blood in their noses and ears. Jacky was comatose and was ultimately euthanized. Amik had two fractured limbs that would require surgery.

¶ 25    In addition, the evidence presented by the State showed that "a great deal of force" would have been required to cause Amik's injuries, and multiple "extremely strong" kicks could have caused Jacky's injuries. Both Drs. Martin and Hafemann testified that the dogs' injuries could not have been caused by falling down the stairs. This evidence regarding the nature and seriousness of the dogs' injuries supported a finding that Mr. Wojcik intentionally inflicted the dogs' injuries. See *Robards*, 2018 IL App (3d) 150832, ¶¶ 14-15 (finding proof of intent to kill or injure dogs beyond a reasonable doubt where the defendant, who was only person caring for the dogs, moved out, leaving the dogs in house without water source and they died from dehydration and starvation); *People v. Primbas*, 404 Ill. App. 3d 297, 302 (2010) (affirming conviction for aggravated cruelty based on circumstantial evidence of intent where the defendant shot a dog with a pellet gun, despite his denial of intent to injure or kill).

¶ 26    In reaching our conclusion, we are not persuaded by Mr. Wojcik's unsupported contention that "the dogs' injuries themselves do not prove the requisite intent." Although Mr. Wojcik

8

hypothesizes that that the small dogs' injuries could have been caused if he accidentally kicked the animals down the stairs, this argument is directly contradicted by the record. As mentioned, each of the three doctors gave expert opinions that the dogs' injuries were not caused by falling down the stairs. Dr. Martin stated that Jacky and Amik's injuries on May 27 could not have been caused by falling down the stairs. Dr. Hafemann, who examined Amik on May 27, did not believe Amik's injuries could have been caused by falling downstairs. And although Dr. Podlecki testified that a substantial fall could have caused the fractures to Jacky's leg, she explained that by "substantial" she meant a fall from at least a second story balcony or higher, or "at least a full flight of stairs, if not more." She specifically stated that she would not expect to see the combination of injuries that Jacky suffered on May 22 from a fall down nine stairs. Thus, contrary to Mr. Wojcik's contention, the evidence supported the trial court's finding that the dogs' injuries were not caused by a fall. Mr. Wojcik's argument that we should reduce his conviction to cruel treatment to animals based on a lack of proof of his intent is unfounded. 720 ILCS 5/4-6 (2016).

¶ 27    We are similarly unpersuaded by Mr. Wojcik's claim that someone else could have injured the dogs. There was simply no evidence presented at trial that anyone else had access to the dogs or caused their injuries. Mr. Wojcik's reliance on Dr. Martin's testimony that another man accompanied Mr. Wojcik when he brought the injured animals to the veterinary office on May 22 is misplaced. The trial court was not required to come up with all possible theories of Mr. Wojcik's innocence and elevate them to a reasonable doubt. See *People v. Richardson,* 104 Ill. 2d 8, 12-13 (1984); *People v. Lee*, 2015 IL App (1st) 132059, ¶ 63. On appeal, all reasonable inferences from the evidence must be allowed in favor of the State and we will not entertain a search for any reasonable hypothesis of Mr. Wojcik's innocence, as Mr. Wojcik urges us to do. See *Lee*, 2015 IL App (1st) 132059, ¶ 63 (affirming conviction for aggravated cruelty to an animal and refusing to

"search out possible theories of acquittal or invent hypotheses and prefer them over the findings of the jury."). As mentioned, this court will only reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of a defendant's guilt. See *Brown*, 2013 IL 114196, ¶ 48. This is not one of those cases.

¶ 28 Mr. Wojcik's other argument on appeal is that he was improperly convicted of multiple offenses based on the same physical acts, in violation of the one-act-one-crime principle. Specifically, he argues that the State did not show that three separate acts caused Jacky's injuries and that two separate acts caused Amik's injuries. Therefore, he maintains that he should have been convicted of two counts of aggravated cruelty to a companion animal, one count per dog. In setting forth this argument, Mr. Wojcik acknowledges that he forfeited this claim by failing to preserve it for appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186-88 (1988) (examining general rule that both an objection at trial and a written posttrial motion are necessary to preserve an alleged error for review). However, Mr. Wojcik asks that we review this claim as plain error.

¶ 29 A reviewing court may consider an unpreserved error where a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sebby*, 2017 IL 119445, ¶ 48; *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). An alleged one-act, one-crime violation is reviewable under the second prong of the plain error doctrine because it is a substantial right that affects the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10. Thus, we turn to the merits of Mr. Wojcik's claim to determine whether a clear or obvious error occurred at trial. See *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565.

¶ 30 In considering whether a violation of the one-act, one-crime rule occurred, we first determine whether Mr. Wojcik's conduct consisted of a single physical act or separate acts. *Coats*, 2018 IL 121926, ¶ 12. Multiple convictions are improper where they arise from the same physical act. *Id.*; see *People v. King*, 66 Ill. 2d 551, 566 (1977). An "act" is "any overt or outward manifestation which will support a different offense." *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996) (quoting *King*, 66 Ill. 2d at 566). If Mr. Wojcik's conduct is based on more than one physical act, then we consider whether any of the offenses are lesser-included offenses. *Coats*, 2018 IL 121926, ¶ 12. Whether a conviction should be vacated under the one-act, one-crime rule is a question of law, which we review *de novo*. *Id.*; *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 31 Multiple strikes, despite being closely related, are not one physical act and may support multiple convictions. *People v. Dixon*, 91 Ill. 2d 346, 355-56 (1982); *People v. Jimerson*, 404 Ill. App. 3d 621, 637 (2010). However, in order for multiple charges to be sustained, "the indictment must indicate that the State intended to treat the conduct of [the] defendant as multiple acts." *People v. Crespo*, 203 Ill. 2d at 345 (2001). In *Crespo*, our supreme court stated that where a victim was stabbed multiple times, each of the victim's stab wounds could support a separate offense. 203 Ill. 2d at 342. However, multiple convictions were improper in *Crespo* because that was not the theory under which the State had charged the defendant, nor did it conform to the way the State presented and argued the case to the jury. *Id.*; see *People v. Jimerson*, 404 Ill. App. 3d 621, 636 (2010); *People v. Green*, 339 Ill. App. 3d 443, 458-59 (2003). To apportion the crimes among the various stab wounds for the first time on appeal would be profoundly unfair, and would invade the province of the jury, which may or may not have determined that any one of the stab wounds constituted a separate crime. *Crespo*, 203 Ill.2d at 344. In *People v. Bishop*, our supreme court further explained that, due to constitutional considerations, such as a defendant's "right to be

informed of the nature and cause of the charges brought against him so that he may prepare a defense and so that the charges may serve as a bar to subsequent prosecution arising out of the same conduct," the State must indicate in the indictments that it is seeking multiple convictions. 218 Ill. 2d 232, 242 (2006).

¶ 32    In this case, the State charged Mr. Wojcik with multiple counts of aggravated cruelty to a companion animal based on nine distinct injuries suffered by the dogs, five to Jacky and four to Amik. At trial, the State presented evidence that "blunt force trauma" including "an extremely strong kick and multiple times" caused the combination of injuries that Jacky suffered. The State also presented evidence that Amik's injuries, which included "at least *** two fractured limbs," required "a great deal of force" as they involved the biggest bones in the dog's body. The State did not change its theory on appeal and Mr. Wojcik was properly informed of the nature and cause of the charges. See *Bishop*, 218 Ill. 2d 232, 243 (2006); *Crespo*, 203 Ill. 2d at 345. The trial court considered each count, finding the State had not met their burden of proof with respect to four of the counts, and had proven that Mr. Wojcik caused the injuries specified in the five remaining counts beyond a reasonable doubt. Thus, here, the court considered which counts constituted a separate crime. *Cf. Crespo*, 203 Ill. 2d at 344 (noting that the jury may or may not have determined that any one of the stab wounds constituted a separate crime where the State changed its theory on appeal).

¶ 33    Mr. Wojcik acknowledges that the State presented evidence that Jacky's injuries resulted from "multiple trauma" and that Jacky was kicked "multiple times." However, he argues that, based on the dogs' small size, it was possible that one act caused their injuries. In support of this argument, Mr. Wojcik claims that Dr. Podlecki "unequivocally testified that Jacky's injuries could have resulted from one impact, such as a substantial fall down stairs." Mr. Wojcik mischaracterizes

Dr. Podlecki's testimony. She testified that, although a substantial fall could cause the injuries that Jacky suffered on May 22, she would not expect to see the combination of Jacky's injuries from a substantial fall. Therefore, Mr. Wojcik's contention that it was possible that one act, such as a fall down the stairs, could have caused the dogs' injuries is contradicted by the record.

¶ 34    Here, the State indicated its intent to treat the multiple acts as separate charges and did not change its theory on appeal. Mr. Wojcik was apprised of the charges and the trier of fact considered which of the separate injuries could support separate findings of guilt. There was no violation of the one-act, one-crime rule. Accordingly, Mr. Wojcik has failed to demonstrate that a clear or obvious error occurred at trial.

¶ 35                                    IV. CONCLUSION

¶ 36    For the forgoing reasons, Mr. Wojcik's convictions and concurrent 18-month sentences are affirmed.

¶ 37    Affirmed.